AO 106 (Rev. 04/10) Application for a Search Warrant          AUTHORIZED AND APPROVED DATE: s/ Danielle M. Connolly 03/14/2023

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A white in color LG Android cellular phone. | ) ) ) ) ) ) Case No. M-23-162-STE |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |
| 18 U.S.C. § 1951 | Robbery by Force, Violence, or Fear |
| 18 U.S.C. § 2119 | Carjacking |

The application is based on these facts:

See attached Affidavit of Special Agent Bryce Loesing, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:(_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Bryce Loesing, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Mar 14, 2023**

*Judge's signature*

City and state: Oklahoma City, Oklahoma          Shon T. Erwin, U.S. Magistrate Judge
*Printed name and title*

# THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Bryce Loesing, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession and further described in **Attachment A**, and the extraction from that property of electronically stored information described in **Attachment B**.

2. I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so since May 2022. Prior to Employment with ATF, I was employed by the Wichita Police Department. I have been employed in law enforcement for over eight years. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy; as a result of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws. I am currently assigned to the Oklahoma City Field Office and am charged with investigating violations of Federal Law, including violations of the Gun Control Act of 1968, as amended (Title 18, United States Code, Sections 921, et seq.), explosives, arson, alcohol, and tobacco laws.

3. As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants under the authority of the United States.

4. The information contained in this Affidavit is submitted for the limited purpose of establishing probable cause to secure a search warrant for a cellular device: **a white in color LG Android cellular phone, unknown model, bearing an unknown IMEI number** (hereinafter, **Subject Device**), as described further in **Attachment A** (physical description), for evidence of violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm), 18 U.S.C. § 1951 (robbery by force, violence, or fear), and 18 U.S.C. § 2119 (carjacking), as described further in **Attachment B** (description of items to be seized). **Subject Device** is currently located in secure evidence storage at the ATF Oklahoma City Field Office, within the Western District of Oklahoma.

5. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## PROBABLE CAUSE

6. On January 5, 2023, Lincoln County Sheriff's Office (LCSO) deputies responded to an emergency call for service from T.F., who reported that two individuals – later identified as Khyron Daun SHARIF (SHARIF) and Cheyenne Briana LEWIS (LEWIS) – hit her with a baton and stole her vehicle, a white Toyota Sequoia.[1]

---

[1] Toyota does not maintain manufacturing facilities within the state of Oklahoma. As a result, this vehicle was manufactured outside of Oklahoma and therefore had been transported in interstate or foreign commerce in order to arrive in Oklahoma.

2

7.  T.F. advised that she had previously purchased a Chevrolet Suburban from LEWIS and that it had recently been impounded. T.F. arranged to meet LEWIS in Stroud, Oklahoma, to obtain the documents necessary to have the vehicle released from impound.

8.  T.F. advised that when she arrived in Stroud, Oklahoma, SHARIF and LEWIS forced her into the passenger seat of the Toyota Sequoia. SHARIF hit T.F. with an extendable baton and his fists. SHARIF got into the driver's seat and LEWIS entered the back seat of the vehicle. SHARIF drove around for approximately six miles, preventing her from exiting the vehicle, while LEWIS forced T.F. to use her thumbprint to unlock her cell phone. SHARIF and LEWIS demanded that T.F. give them all the money she had and took a total of approximately $520.00 from her person. They stole an additional approximately $190.00 from T.F.'s CashApp account by accessing the CashApp application on T.F.'s cell phone. SHARIF and LEWIS also took T.F.'s purse and wallet, which contained her identification cards and other property.

9.  T.F. advised that at one point, the vehicle was moving slowly enough that she was able to jump out. SHARIF and LEWIS drove off in the Toyota Sequoia without T.F. She was treated at a local hospital and spoke with law enforcement there. T. F. sustained bruising on her arm and face as a result of the incident, which were documented by LCSO deputies.

10. LEWIS was located by law enforcement later the same day. She was arrested and booked into the Lincoln County Jail. LCSO investigators also obtained an arrest

warrant for SHARIF for first degree robbery and assault and battery with a dangerous weapon based upon the conduct described *supra*.[2]

11. Inmates at the Lincoln County Jail are assigned unique pin numbers and provided with phone privileges, which may include both traditional audio-only calls and audio/video calls. Parties to these calls are notified at the time of connection that communications from inmate accounts are monitored and recorded.

12. On January 20, 2023, LCSO Detective Kelly Coleman reviewed recorded calls made from LEWIS's account at the Lincoln County Jail. He discovered a video call recorded January 18, 2023, between LEWIS and SHARIF, during which SHARIF asked LEWIS, "Do you want to see my new gun?" SHARIF then displayed a firearm on the screen that appeared to have a silver slide and black lower receiver. LEWIS replied, "Get that off of here."

13. The results of a query into SHARIF's criminal history includes the following felony convictions:

    a. possession of a sawed-off shotgun/rifle and possession of a controlled substance in Lincoln County District Court case number CF-2010-170;

    b. possession of a controlled substance in Lincoln County District Court case number CF-2012-76;

    c. possession of a controlled substance in Lincoln County District Court case number CF-2016-319; and

    d. larceny of automobile after former conviction of two or more felonies in Lincoln County District Court case number CF-2017-72.

---

[2] At the time, SHARIF also had an active warrant issued by the Tulsa County District Court in case number CF-2022-4003, in which he is charged with being a felon in possession of a firearm.

4

14. A review of court documents in the cases mentioned *supra* indicates that Defendant was represented by counsel and present at each sentencing, all of which occurred prior to January 18, 2023. He also served a term of incarceration in the custody of the Oklahoma Department of Corrections. As a result, it is clear that SHARIF is aware of his status as a convicted felon.

15. On January 25, 2023, the United States Marshals Service (USMS) received information about SHARIF's possible whereabouts and subsequently located him walking outdoors in Bristow, Oklahoma. USMS and LCSO deputies took him into custody on his outstanding warrants. At the time, SHARIF was in possession of a black backpack, a brown backpack, and a black duffel bag. He advised law enforcement that there was a firearm inside the black backpack. Deputies located a Sig Sauer, model P290RS, 9mm caliber pistol, bearing serial number 26C014955, in the backpack, which was placed in LCSO custody. The pistol, which has a silver slide and black lower receiver, appears to match the firearm displayed by SHARIF in the jail call recorded on January 18, 2023.

16. SHARIF was also in possession of three cell phones at the time of his arrest, including **Subject Device**. All three devices were booked into LCSO evidence. On January 26, 2023, all three devices, including **Subject Device**, were transferred into ATF custody and have been stored in manner in which the contents, to the extent material to this investigation, are in substantially the same state as they were when the devices first came into the possession of the ATF. They have remained in secured property at the ATF Oklahoma City field office within the Western District of Oklahoma.

## **TECHNICAL TERMS**

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital

6

cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    c.    Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

    d.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can

contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as

8

personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

18. Based on my training, and experience, I know that **Subject Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in **Attachment B**, this Application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **Subject Device** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Device** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or

9

of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant for which I am applying would permit the examination of the **Subject Device** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the **Subject Device** described in **Attachment A** to seek the items described in **Attachment B**.

Respectfully submitted,

*Bryce A. Loesing*
BRYCE LOESING
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on this 14th day of March, 2023

*Shon T. Erwin*
SHON T. ERWIN
United States Magistrate Judge

# ATTACHMENT A

1. The property to be search is a white in color LG Android cellular phone, unknown model, bearing an unknown IMEI number (hereinafter, **Subject Device**), which is currently located in secure storage at the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Field Office within the Western District of Oklahoma. **Subject Device** is depicted below:



2. This warrant authorizes the forensic examination of **Subject Device** for the purpose of identifying the electronically stored information described in **Attachment B**.

## ATTACHMENT B

1. All records on the **Subject Device**, described in **Attachment A**, that relate to violations of 18 U.S.C. §§ 922(g)(1), 1951, and 2119 involving **SHARIF** including:

   a. electronically stored information, including, but not limited to the phone directory and/or contact list, calendar, text messages, multi-media messages, email messages, call logs, photographs, and videos;

   b. any location data indicating the whereabouts of **Subject Device**;

   c. any information related **SHARIF**'s schedule or travel;

   d. any photographs of firearms;

   e. any photographs of stolen property;

   f. any phone records between known or unknown co-conspirators, including between **SHARIF** and **LEWIS**;

   g. any text messages, instant messages, or electronic messages communicating between known or unknown co-conspirators, including **SHARIF** and **LEWIS**;

   h. any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information); and

   i. any bank records, checks, credit card bills, account information, and other financial records, including financial records within applications such as CashApp.

2. Evidence of user attribution showing who used or owned the **Subject Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history:

   a. records of Internet Protocol addresses used;

2

      b.      records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.